UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LESLIE LUTHER, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 5:20-CV-412-CHB |
| ) | |
| v. ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| LOWE'S HOME CENTERS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiffs Leslie Luther and Steven Schwartz's Motion to Remand the case back to state court for lack of subject-matter jurisdiction [R. 5]. Defendant Lowe's Home Centers, LLC (Lowe's) filed a Response [R. 6], and Plaintiffs filed a Reply [R. 7]. For the reasons explained below, the Court will grant Plaintiffs' Motion to Remand.

**I.   BACKGROUND**

Plaintiff Leslie Luther has alleged that on or about May 23, 2019, she was walking in the Garden Center area of the Richmond, Kentucky Lowe's store, when she tripped on a garden hose, fell, and sustained severe injuries. [R. 1-1, ¶ 5 (Complaint); R. 5-1, p. 2; R. 6, p. 2] On January 10, 2020, she and her husband, Steven Schwartz, sued Lowe's (owner of the store), Chris Hill (store manager), and unnamed store employees John Doe and Jane Doe for negligence in Madison Circuit Court. [Complaint, ¶¶ 2–4]

Defendants answered the Complaint on March 26, 2020 [R. 1-11, pp. 3–9 (Lowe's Answer); R. 1-11, pp. 10–16 (Hill Answer)], and later submitted an affidavit from Defendant Hill stating he did not work the day of the alleged incident (or any day that week). [R. 6-5 (Affidavit), ¶ 6] On October 2, 2020, Defendants removed the case to this Court. [R. 1]

1

Defendants invoked the Court's diversity jurisdiction because there is diversity of citizenship between Plaintiffs (citizens of Kentucky) and Lowe's (citizen of North Carolina), and the amount in controversy is over $75,000. [*Id.*, ¶¶ 11–12, 30; *see also* 28 U.S.C. § 1332] Defendants further alleged that Defendant Hill was fraudulently joined, so his presence would not destroy diversity.[1] [R. 1, ¶ 26] Likewise, the presence of Defendants John Doe and Jane Doe would not destroy diversity because unnamed defendants are not relevant for determining diversity jurisdiction. [R. 1, ¶ 27]

On October 9, 2020, Plaintiffs filed a Motion to Remand, arguing the Court lacks diversity jurisdiction because Plaintiffs and Hill are both Kentucky citizens, and Hill was not fraudulently joined. [R. 5] Defendant responded [R. 6], and Plaintiffs replied. [R. 7]

## II. Legal Standard

To invoke the Court's diversity jurisdiction, the removing party must demonstrate complete diversity at the time of removal—that is, all plaintiffs must be diverse from all defendants, and the amount in controversy must exceed $75,000. 28 U.S.C. §§ 1332(a), 1441(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). All doubts concerning the propriety of removal must be resolved in favor of remand. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006); *Coyne*, 183 F.3d at 493.

Here, it is undisputed that Plaintiffs and Defendant Hill are both citizens of Kentucky. [Complaint, ¶¶ 1, 3; Hill Answer, ¶ 2] According to Defendants, this is no obstacle to the Court's exercise of jurisdiction because they argue that Hill was fraudulently joined. [R. 1, ¶¶ 21–26] "When a non-diverse party destroys complete diversity, 'the removing defendant may avoid

---

[1] Defendant Hill admitted in his Answer that he was a resident of Kentucky. [Complaint, ¶ 3; Answer, ¶ 2]

2

remand only by demonstrating that the non-diverse party was fraudulently joined.'" *Clark v. Lowe's Home Ctrs., LLC*, No. 6:19-CV-114-REW, 2019 WL 5092941, at *1 (E.D. Ky. Oct. 11, 2019) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). A party alleging fraudulent joinder "must demonstrate that there is no 'colorable' cause of action" against the defendant. *Pinion v. Wal-Mart Stores E., LP*, No. CV 15-25-ART, 2015 WL 12989971, at *1 (E.D. Ky. May 12, 2015) (quoting *Coyne*, 183 F.3d at 493).

Lowe's bears a "heavy burden" in demonstrating fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489–90 (6th Cir. 2013); *see also Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011). Here, Hill's joinder is fraudulent only if it is "clear that there can be no recovery [against Hill] under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). If Plaintiffs have "even a 'glimmer of hope' then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject-matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (quoting *Murriel–Don Coal Co.*, 790 F. Supp. 2d at 597); *see also Clark*, 2019 WL 5092941, at *1. The fraudulent joinder test is more lenient than the standard for a 12(b)(6) motion to dismiss, *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012), and requires resolving "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party," *Coyne*, 183 F.3d at 493 (quoting *Alexander,* 13 F.3d at 949) (alteration added by *Coyne* court).

A plaintiff's motive is "irrelevant" to the fraudulent joinder inquiry. *Jerome-Duncan*, 176 F.3d at 907. The Court, in assessing the motion, may consider summary judgment–type evidence

3

but solely "for the limited purpose of determining whether there are 'undisputed facts that negate [the plaintiff's] claim.'" *Casias*, 694 F.3d at 433 (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 955–56 (6th Cir. 2011)).

### III. Discussion

The Court finds that Defendants have not met their "heavy burden" of demonstrating fraudulent joinder. Plaintiffs argue that numerous cases throughout the Eastern and Western Districts of Kentucky show that their negligence claim against a store manager remains colorable despite Defendant Hill being absent from the Lowe's store on the week of the incident. [R. 5, pp. 5–13] Plaintiffs argue that Hill, as manager of the store, had an independent duty separate from the duty of other employees or his employer to keep the store safe from hazards, and he failed to exercise care in performing that duty. *Id.* at 13–15. Plaintiffs claim that Lowe's has prevented them from discovering which employees were working at the store that day, not allowing them a chance to sue other employees that may have been even more directly responsible for the garden hose's placement in the walkway. [R. 7, pp. 4–5]

In response, Defendant Lowe's argues that Plaintiffs do not have a colorable claim under Kentucky tort law because Defendant Hill cannot be held liable for causing the fall when he was not at the store on that day. [R. 6, p. 16 ("The idea that a manager who did not work and was not present the day of the accident, or five days before, somehow owes plaintiffs a duty of any kind to ensure that a garden hose was properly secured or stored is not supported by Kentucky law.")] Lowe's cites primarily to *Gayheart v. Wal-Mart, Inc.*, No. 7:18-CV-00096-GFVT, 2018 WL 6028702 (E.D. Ky. Nov. 15, 2018), a case it says is "directly on point" and found that the customer lacked a colorable claim against the store employee. [R. 6, pp. 10–11] Lowe's next invokes *Grubb v. Smith*, 523 S.W.3d 409 (Ky. 2017) for the proposition that employees need

4

sufficient control over a condition on their premises to be liable in tort, and like the employee in *Grubb*, Hill lacked that control. [R. 6, pp. 12–15] Finally, Lowe's argues that *Beasley v. Kaelin*, No. 2017-CA-924-MR, 2019 WL 4565545 (Ky. Ct. App. Sept. 20, 2019), *review denied* (Apr. 22, 2020) confirms that Kentucky law does not impose a universal duty on managerial employees to keep the premises free from hazards they did not create. [R. 6, pp. 15–16]

Aside from Kentucky tort law, Defendant Lowe's argues that remand back to state court would be improper because diversity jurisdiction is designed to protect nonresident corporate defendants like Lowe's from having to defend suits in a "foreign" state court. *Id.* at 16–17. Lowe's maintains that Plaintiffs should not be able to drag it into state court by naming an employee who was only identified through a Better Business Bureau webpage. *Id.* Lowe's also argues that under 28 U.S.C. § 1441(a), defendants with fictitious names cannot impact diversity, so Plaintiffs' naming of John and Jane Doe in their complaint is immaterial. [R. 6, pp. 17–18]

The Court must determine whether there is any colorable claim under state law against Hill, the non-diverse party, understanding the limited nature of federal jurisdiction and resolving all factual and legal uncertainties in favor of remand. *Eastman*, 438 F.3d at 549–50; *Coyne*, 183 F.3d at 493. More specifically, the key question is whether Hill, a store manager, has individual liability to an injured invitee (Luther) under Kentucky law. As explained below, this inquiry necessitates a review of the factual record before the Court (which is virtually undeveloped at this procedural posture) and the status of relevant Kentucky law (which, as explained below, is far from settled). Given these two uncertainties, the Court can hardly find Plaintiffs' claims against Hill have no chance of recovery.

Turning to the record, the Complaint reveals few details about the allegedly dangerous water hose. Likewise, there are few details concerning Hill's employment duties as store

5

manager. Lowe's focuses on Hill's alleged lack of control or responsibility over the garden hose *on May 23, 2019*. [R. 6-5, ¶¶ 7–9] Specifically, Hill attests that "I did not inspect the Garden Center and was not responsible for inspecting the Garden Center on May 23, 2019," *id.*, ¶ 7; "I was not responsible for watering plants at the Garden Center and did not supervise the watering of plants at the Garden Center on May 23, 2019," *id.*, ¶ 8; and "I was not responsible for the use of water hoses at the Garden Center on May 23, 2019," *id.*, ¶ 9. He continues that he "did not train Lowe's employees, including safety training or training on the use of water hoses or watering plants at the Garden Center." *Id.*, ¶ 10. His conclusory affidavit, other than acknowledging that he was manager at the time, contains no details concerning the scope of his duties and responsibilities generally, nor leading up to the accident specifically. Neither does it detail his potential responsibility to implement safety or training policies (even if he did not perform the training), to maintain or inspect the store, to control and oversee staff, or to hire and supervise employees, including trainers or maintenance staff. His affidavit focuses almost entirely on the narrow window of May 23, 2019.

The state court Complaint alleges Hill "failed to exercise ordinary care to maintain the premises of the Lowe's store . . . in a reasonably safe condition, and free of obstructions of a dangerous nature and dangerous condition," "failed to exercise ordinary care in giving improper or ambiguous orders or in failing to make proper safety regulations," "employed improper persons or instrumentalities," "failed to exercise ordinary care in hiring, retaining, supervising, or training, persons or instrumentalities to maintain safe premises," and "permitted, or failed to prevent, negligent or other tortious conduct by persons whether or not his servants or agents." [Complaint, ¶ 7]

It is undisputed that Hill was the Lowe's store manager. [Complaint, ¶ 3; Hill Answer, ¶ 2] Plaintiffs further argue that a garden hose in the Lowe's Garden Center caused Luther to fall and injure herself.[2] [R. 5-1, p. 2; R. 6, p. 2] Defendants attach a number of pictures taken immediately after Luther fell, which depict a gray or black garden hose with a pale, thin stripe stretched across gray concrete between the aisles of the Garden Center. [R. 6-3] It is also undisputed that Hill was not working the day of the alleged incident, or any of the four days preceding. [R. 6-6] Other than that, there are few details before the Court concerning the garden hose, how long it had been in this location, how frequently it is placed in this location, and whether this placement had caused tripping incidents in the past that were brought to Hill's attention as store manager. Again, the facts are wholly undeveloped on this significant issue.

The legal questions posed here are similarly unclear. To determine whether Plaintiffs' negligence claim is colorable, the Court considers the source and scope of Hill's duty to Luther as a store manager under Kentucky law. The topic was explored recently by the Kentucky Supreme Court in *Grubb v. Smith*. This Court's recent decision in *Ashley v. Wal-Mart Stores East, LP*, No. 6:20-CV-106-CHB, 2020 WL 7646972 (E.D. Ky. Dec. 23, 2020) contained extensive analysis of *Grubb*, and the Court will not repeat that analysis here. *See id.* at *4. To be sure, Kentucky premises-liability law for employee/store manager negligence remains unclear in the wake of the split opinion in *Grubb*. *Id.* at *4 ("*Grubb* makes determining a clear standard/rule virtually impossible."). Half of the Kentucky Supreme Court would have limited employees' liability essentially to situations where they have "substantial control of the injury-causing object

---

[2] Defendant Lowe's has only acknowledged that Luther claims a garden hose caused her fall, without admitting to that fact. [R. 6, p. 2] Lowe's, however, offers no evidence to challenge Luther's version of events, other than potentially disputing the color of the offending hose. *Id.* At any rate, Defendant's refusal to admit Luther's version of events is immaterial for the purposes of this Motion because the Court will resolve all factual (and legal) disputes in favor of the non-removing party. *Coyne*, 183 F.3d at 493.

7

or condition" ("the Hughes approach"). *Id.*; *Grubb*, 523 S.W.3d at 427 (opinion of Hughes, J.). The other half ("the Venters approach") would have applied general negligence principles—the manager's duty/role, assessment of foreseeable harm, knowledge, and "the consequences of their own negligent acts or omissions." *Grubb*, 523 S.W.3d at 432 (opinion of Venters, J.). Even Justice Hughes's standard does not immunize Hill from potential liability simply because he was not the premises owner or possessor of the land. Justice Hughes noted that "the fact that [an agent/store manager] was *not* the 'possessor' of the premises in the same sense that [the principal] *is* the 'possessor' does not mean that [the agent/store manager] has no potential liability" to third-party invitees in premises-liability suits, like this one. *Id*. at 423 (opinion of Hughes, J.) (emphasis in original). But Justice Hughes and Justice Venters disagreed on under *what circumstances* the agent/store manager could be subject to liability. *Id.* at 426–27 (opinion of Hughes, J.), 431–34 (opinion of Venters, J.). What *is* clear from the divided opinion is that the question of a store manager's potential for premises liability under Kentucky law is a fact-driven inquiry that must be resolved on a case-by-case basis. *Id.* at 427 (opinion of Hughes, J.); *Morris v. Walmart Stores E., L.P.*, No. 6:20-CV-150-REW, 2021 WL 203197, at *4 (E.D. Ky. Jan. 20, 2021).

      This Court recently considered a similar claim of fraudulent joinder against a Lowe's store manager under factually analogous circumstances and grappled with the legal duty owed by a store manager to its customers in light of the split decision in *Grubb*. *See Clark v. Lowe's Home Ctrs., LLC*, No. 6:19-CV-114-REW, 2019 WL 5092941, at *1 (E.D. Ky. Oct. 11, 2019). In *Clark*, the plaintiff tripped over an outside store display featuring a low barrier. *Id.* at *1. Citing *Grubb*, the store manager in *Clark* argued (like Defendant Lowe's) that she could not be held liable because she did not control the specifics of the display and did not have sufficient

8

control over the store for premises-liability purposes. *Id.* at *2. The plaintiff's complaint, like the one here, generally alleged that the store manager had certain duties including "store maintenance, supervision and training of employees" and that "discovery may reveal that [the manager] had direct involvement" in the display or "had knowledge of the dangerous condition" it created. *Id.* Based on her affidavit, the store manager, like Hill, disclaimed "sufficient control" over the store display and the store itself to allow premises liability against her. *Id.* Nevertheless, the court found the plaintiff's factual allegations and legal theory were sufficient to clear the low bar of the fraudulent joinder standard. *Id.* at *2, *5.

After dissecting the uncertainty in Kentucky law even after *Grubb* and noting the sparse factual record before it, the *Clark* court reasoned that the plaintiff had a colorable claim under either the Justice Hughes or Justice Venters approach. The court reasoned:

> [I]s it possible that a Lowe's manager has enough control over the store premises to edge across the [Justice] Hughes line? Remember, Justice Hughes referenced control enough "to remedy" the defect, and substantial control over "the injury-causing object or condition." [*citing Grubb*, 523 S.W.3d at 425, 427]. Here, the defect involved a temporary and created condition, an outside store display featuring a low barrier. Is it possible that a Lowe's manager has, at minimum, the power to control, to correct, to remedy a display that presents a hard-to-discern tripping hazard? Is such a display—here the alleged injury-causing object—substantially within the manager's control? A positive answer signals potential liability under even the most restrictive *Grubb* opinion.

> Further, if it turns out that [the manager] had a hand in the display erection, and if she acted without due care, even the Hughes formulation suggests potential liability for an activity causing harm. . . . Obviously the [Justice] Venters three would bless a claim if [the store manager] created or knew about the risk and failed to take remedial action, including warning about an objectively unapparent risk. . . Here the record does not detail (or certainly negate) [the manager's] duties, actions, relevant knowledge, or relevant power at Lowe's. The record does not show whether [the manager] oversaw or regularly reviewed the outdoor displays. The record does not show, pro or con, any notice as to problems with the display.

9

*Id.* at *4.

Likewise, the facts here involve a "temporary and created condition," a water hose pulled across the walkway in the Garden Center. Is it possible that Hill, as manager, had the power "to control, to correct, to remedy a [garden hose] that presents a hard-to-discern tripping hazard?" *Id.* Is such a condition—a garden hose stretched across the Garden Center aisle—"substantially within the manager's control?" *Id.* A positive answer would provide a potential for liability even under the Justice Hughes opinion in *Grubb*. That Hill was not present on the day Luther tripped does not automatically foreclose potential liability. If Hill was aware of prior customer complaints or tripping incidents involving this condition, it is possible that he had the power "to control, to correct, [or] to remedy" the "created condition" (even if he was not present on that particular day) and could have instructed his employees to discontinue it. *Id.*

Certainly if facts develop that Hill had a hand in creating the condition involving the garden hose or approved this method of watering the plants in the Garden Center, and if he did so without due care, he might potentially be liable even under the Justice Hughes standard. *Grubb*, 523 S.W.3d at 426. And, as the *Clark* Court reasoned, if Hill knew about the risk posed by water hoses, either on May 23, 2019 or similar use prior to that date, and failed to take remedial action, including failure to warn about an objectively unapparent risk, it is possible he could be liable under the Justice Venters approach. *Id.* at 433–34; *Clark*, 2019 WL 5092941, at *4. As in *Clark*, the record here does not detail Hill's duties, actions, relevant knowledge or power and authority at Lowe's. It does not show whether Hill "oversaw or regularly reviewed" the use of garden hoses as was done on May 23, 2019. *Id.* And the record does not demonstrate whether there were past problems with the use of the water hose in this manner that might have placed Hill on notice as store manager. *Id.* On the record before the Court, the Court cannot tell

if the garden hose's position was an isolated event or a recurring condition that could have been prevented by the manager. *See Ashley*, 2020 WL 7646972, at *5.

The only pertinent factual difference between the present case and *Clark* is that there was no allegation in *Clark* that the manager was not present on the day of the accident. However, this Court has recently addressed negligence claims against off duty store managers. First, in *Ashley v. Wal-Mart Stores East, LP*, No. 6:20-CV-106-CHB, 2020 WL 7646972 (E.D. Ky. Dec. 23, 2020), the plaintiff alleged that she slipped and fell on a liquid mixture at a Wal-Mart store and sued both Wal-Mart and the store manager, even though the manager was not working that day. *Id.* at *1. On a motion to remand, this Court found the plaintiff's claim to be colorable since further factual development might demonstrate the manager's direct actions while he was working, his supervision, or his hiring may have led to the unsafe liquid mixture on the floor that caused the plaintiff's fall. *Id.* at *5. The *Ashley* plaintiff's claim would have been colorable under either of *Grubb*'s standards—the Hughes "substantial control" test (because it was "conceivable" that the manager had enough control to remedy the defect while he was working) or Venters's traditional negligence principles (because the manager may have negligently acted or failed to act in a way that caused the injury). *Id.*

Similarly, in *Morris v. Walmart Stores E., L.P.*, No. 6:20-CV-150-REW, 2021 WL 203197, at *6 (E.D. Ky. Jan. 20, 2021), the court rejected the store's argument that the store manager's absence on the day of the injury compelled a finding that, as a matter of law, the manager lacked the requisite control for liability. The *Morris* court explained that the Justice Hughes standard is "better understood as requiring a fact-dependent analysis to answer the difficult question of whether a particular land possessor's agent should be liable 'to third persons for the agent's nonfeasance.'" *Id.* at *5 (*quoting Grubb*, 523 S.W.3d at 427 (opinion of Hughes,

11

J.). After analyzing the particular facts in *Grubb,* where the store manager, as Justice Hughes noted, had a "limited managerial position, especially with regard to premises maintenance," *Grubb*, 523 S.W.3d at 427, the *Morris* court concluded, "It would be an overbroad misapplication of Justice Hughes's position in *Grubb* to conclude that it leaves [the plaintiff] with no glimmer of hope in a claim against [the store manager] because [the store manager] was absent on the day of injury." *Morris*, 2021 WL 203197, at *5. That is, "Justice Hughes did not propose that control hinges narrowly on physical presence." *Id.* Rather, the court must examine the store manager's "actual role and responsibilities as manger." *Id.* The *Morris* court likened the Justice Venters approach as viewing the store manager as "the flesh and blood personification of [the premises owner] itself," which "potentially carries the duty to execute the employer's overarching duties of reasonable care with respect to the premises." *Id.* Noting that "[b]oth Justices looked carefully at the manager's actual role, authority, maintenance duties, inspection and repair power, and discretion," and further noting the "record here does not permit the type of detailed scrutiny dictated by *Grubb*," the *Morris* court could not agree with the store's blanket argument that the manager's absence from the store on the day of injury precluded the plaintiff's claim. *Id.* at *6.

      Likewise, Hill's absence from the Lowe's store on the day of Luther's injury, or in the days leading up to it, does not automatically compel a finding of fraudulent joinder. As explained above, crucial facts concerning Hill's actual duties and responsibilities as manager are absent from the record and necessary to undertake a complete analysis under either the Justice Hughes or Justice Venters standard. Likewise, this record contains scant facts concerning the injury-causing condition, the garden hose, and how long it had been in this area, whether garden hoses had similarly been used in the past, and whether such use had caused previous injuries triggering

notice to Hill. It is certainly conceivable that facts might be developed supporting a colorable cause of action under the dueling standards outlined in *Grubb* whether Hill was on duty the day Luther fell or not. This Court must assess the potential for a successful claim, not assess the merits of that claim.

Other federal district courts in Kentucky have applied the fraudulent joinder standard similarly. In *Pinion*, the plaintiff slipped and fell in a Wal-Mart (apparently from a leak) and sued the store manager. 2015 WL 12989971, at *1. Even though the manager's affidavit disclaimed knowledge or responsibility for the condition that caused the leak, the *Pinion* court found that the manager was not fraudulently joined, since there was no clear rule against manager liability and the manager could have otherwise been responsible for mitigating the danger from the leak. *Id.* at *2. The court further reasoned: "[The manager's] affidavit leaves unanswered questions about the scope of his duties to Wal-Mart invitees . . . . And, viewing the facts in [the plaintiff's] favor, it is surely reasonable to believe that managers have a duty to keep their store clean and free from hazards." *Id.* at *2. Importantly, *Pinion* was decided before the Kentucky Supreme Court's decision in *Grubb*, but it analyzed the earlier Court of Appeals ruling in that case, which adopted the more restrictive approach to premises liability for store managers. *Smith v. Grubb*, No. 2011-CA-223-MR, 2014 Ky. App. Unpub. LEXIS 1045, at *20 (Ky. Ct. App. Sept. 26, 2014). That is, *Pinion* found the plaintiff's allegations survived fraudulent joinder even under the standard ultimately adopted by Justice Hughes and two colleagues: "[E]ven a person who possesses but does not own premises—like [the store manager]—can owe invitees a duty." *Pinion*, 2015 WL 12989971, at *2; *see also Mitchell v. Dow Chem. Co.*, No. CIV. 11-117-ART, 2011 WL 2938156, at *2 (E.D. Ky. July 19, 2011) ("[C]ourts have also routinely rejected fraudulent joinder arguments in an analogous situation where a plaintiff is injured on a store's

13

premises (in a slip-and-fall, say) and sues both the national chain and the non-diverse store manager.").

Defendant's reliance on *Gayheart* and *Beasley* is misplaced for the same reasons this Court cited in *Ashley*, 2020 WL 7646972, at *6. *Gayheart* concerned a Wal-Mart non-managerial employee sued by a slip-and-fall plaintiff. 2018 WL 6028702, at *2. Using the "sufficient control" test outlined by Justice Hughes's opinion in *Grubb*, the *Gayheart* court dismissed the employee based on fraudulent joinder for not having sufficient control over the leaky ceiling at issue and because the employee, as "merely an employee and *not even a manager*," had no duty to warn of an allegedly unsafe condition that he had not created. *Id.* at *3 (emphasis added). *Gayheart* is distinguishable on two grounds. First, unlike Higgins, the employee in *Gayheart* was not a manager, so there could be no allegation, as Plaintiffs claim here, that the employee had duties to maintain, supervise, and inspect the premises. Second, *Gayheart* did not grapple with the uncertainty posed by the 3–3 *Grubb* split. *See Clark*, 2019 WL 5092941, at *5 ("*Gayheart* treated *Grubb* as definitive on the manager-duty measure; *Gayheart*, however, did not wrestle with the 3–3 nature of that key section of *Grubb*, so the Court discounts *Gayheart*'s force."). There is considerably more ambiguity in Kentucky premises-liability law related to store managers than *Gayheart* or Defendants acknowledge.

*Beasley* involved "distinctly different facts" than a case against a superstore manager, since the defendant employee in *Beasley* was a circuit clerk who had no duty to maintain the premises. *Ashley*, 2020 WL 7646972, at *6; *see also Beasley*, 2019 WL 4565545, at *3. There the plaintiff slipped on recently waxed floors in the local clerk's office and sued the clerks and the company that waxed the floors for failure to maintain the premises in a safe condition and failure to warn. *Beasley*, 2019 WL 4565545, at *1. In finding there was no liability against the

14

clerks, the court outlined the contours of the clerks' actual work duties and authority (or lack thereof) concerning the premises and its maintenance and inspection. *Id*. at *3–4. Contrasting the facts with those in *Grubb*, the court noted that "[u]nlike the manager in *Grubb*, the Clerks were not required to inspect or clean the premises." *Id*. at *4. The *Beasley* decision outlined no broad or sweeping rule on premises liability for clerks (or store managers), nor did it establish a blanket rule that a store manager has no affirmative duty to warn of a condition he/she did not create. Remember, the Kentucky Court of Appeals held that the clerks had no affirmative duty to warn of a condition they did not create because the clerks, contrasted with the manager in *Grubb*, "were not responsible for maintaining the premises or providing janitorial services." *Id*. at *3. Here, we have no factual development concerning Hill's duties, responsibilities, authority, and control as store manager, and few facts concerning the garden hose or Luther's fall.

Defendant's policy argument fails because public policy does not require removal *when the plaintiff has alleged a colorable claim under state law*. Lowe's has shown that removal is helpful to prevent prejudice against out-of-state defendants in state court. [*See* R. 6, pp. 16–17] But the statutes governing removal of state claims balance several interests, not just prejudice to out-of-state defendants. *See Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.").

"The Court's role in assessing claims on a fraudulent-joinder standard is not to adjudicate the dispute; rather, it is to resolve all factual and legal disputes in favor of the plaintiff and decide whether a claim against the defendant has a 'glimmer of hope.'" *Ashley*, 2020 WL 7646972, at *5. Plaintiffs have asserted a negligence claim against Defendant Hill, manager of the store where the injury occurred. Hill's absence on the day of the incident makes the prospect of

15

ultimate liability less likely, but not impossible. If further fact development shows Hill negligently acted or failed to act in a way that contributed to Plaintiffs' injury, such as awareness of the condition itself, a pattern of similar problems in the past and a failure to remedy, or of other related, unsafe procedures in the Garden Center, Plaintiffs could state a colorable claim under Kentucky law. Given the unsettled state of Kentucky premises-liability law, Plaintiffs' negligence claim is colorable when viewing the facts and law in their favor. *See Coyne*, 183 F.3d at 493; *Christensen*, 24 F. Supp. 3d at 613.

Having determined that the Court lacks subject-matter jurisdiction over this case, the Court lacks authority to decide the other motions on review (Plaintiffs' Motion for Leave to Take Depositions [R. 8] and Defendant Lowe's Motion for Leave to Serve Subpoenas [R. 9]). *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 531 (6th Cir. 1999) ("[A] remand to state court divests a district court of jurisdiction such that it may not take any further action on the case."); *see also Eastman*, 438 F.3d at 549–50 (explaining that if a court lacks jurisdiction, any order entered by the court would be void); *Manning v. Wal-Mart Stores E., Inc.*, 304 F. Supp. 2d 1146, 1150 (E.D. Mo. 2004) (deferring a motion to dismiss to state court upon deciding to remand the case).

### IV. CONCLUSION

Because Defendants point to no controlling cases prohibiting liability for managers like Hill, and given the ambiguities left in Kentucky tort law after *Grubb* and the undeveloped record, Plaintiffs have a "glimmer of hope" (however dim) for their claim against Defendant Hill. Defendant Hill was not fraudulently joined, and the Court will grant Plaintiffs' Motion to Remand for lack of subject-matter jurisdiction. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Remand [**R. 5**] is **GRANTED**.

2. Plaintiffs' Motion for Leave to Take Depositions [**R. 8**] is **DENIED as moot.**

3. Defendant Lowe's Motion for Leave to Serve Subpoenas [**R. 9**] is **DENIED as moot.**

4. This case **WILL BE REMANDED** back to Madison Circuit Court.

5. This action is **STRICKEN** from the Court's docket.

This the 13th day of April, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY